```
1                   IN THE UNITED STATES DISTRICT COURT
                     FOR THE CENTRAL DISTRICT OF ILLINOIS
2
    UNITED STATES OF AMERICA,      )
3                                  )
                    Plaintiff,     )
4                                  )
         vs.                       ) No. 09-cr-30098-DRH
5                                  )
    MICHAEL C. FINTON,             )
6                                  ) August 10, 2010
                    Defendant.     )
7
            TRANSCRIPT OF PROCEEDINGS - MOTION TO WITHDRAW
8                BEFORE THE HONORABLE DAVID R. HERNDON
               CHIEF UNITED STATES DISTRICT COURT JUDGE
9
    APPEARANCES:
10
    For the Plaintiff:       David E. Risley, Esq.
11                           Eric Long, Esq.
                             Assistant U.S. Attorneys
12                           318 S. Sixth Street
                             Springfield, IL  62701
13                           (217) 492-4450

14                           Alamdar Shabbir Hamdani, Esq.
                             Assistant Attorney General
15                           950 Pennsylvania Avenue NW
                             Washington, DC  20530
16                           (202) 514-0463

17  For the Defendant:       Robert J. Scherschligt, Esq.
                             Robert Alvarado, Esq.
18                           Federal Public Defenders
                             600 E. Adams, 2nd Floor
19                           Springfield, IL  62701
                             (217) 492-5070
20
                             J. William Lucco, Esq.
21                           Lucco, Brown, et al.
                             224 St. Louis Street
22                           Edwardsville, IL  62025
                             (618) 656-2321
23

24

25
```

```
1    Court Reporter:              Laura A. Blatz, RPR, CRR
                                  U.S. District Court
2                                 750 Missouri Avenue
                                  East St. Louis, IL   62201
3                                 (618) 482-9481

4

5

6
         Proceedings recorded by mechanical stenography;
7    transcript produced by computer.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1        **(Court convened)**

2            *THE COURT:*  Let the record reflect that we're in
3    open court.  We've called the case of the *United States of*
4    *America vs. Michael C. Finton*, Case No. 09-30098.  The
5    Government is present.  Government attorneys that are
6    present:  David Risley, Eric Long, and Alamdar Hamdani.
7    Good morning, gentlemen.

8            *MR. RISLEY:*  Good morning.

9            *THE COURT:*  Defendant is present in court together
10   with his counsel, Robert Scherschligt, Robert Alvarado, and
11   William Lucco.  Good morning, gentlemen.

12           *MR. SCHERSCHLIGT:*  Good morning, Your Honor.

13           *MR. LUCCO:*  Good morning, Your Honor.

14           *THE COURT:*  The matter's been called on the motion
15   of the Defendant's counsel out of the Federal Public
16   Defender's office here in the Central District, Motion to
17   Withdraw.  This comes on the heels of our last hearing here
18   in which Mr. Finton had asked that these same counsel be
19   removed from the case.  We had a long discussion about this
20   matter.  The Court at that time denied the motion and,
21   instead, added Mr. Lucco as a member of the defense team in
22   the hope that the defense could move forward with the
23   original defense team in place, with Mr. Lucco added to
24   that.

25           Mr. Scherschligt, you mentioned in your motion that

1  you feel that you are unable to effectively represent your
2  client because of some actions he has taken, and not just
3  because of that, but coupled with his concerns that he
4  previously took up in the motion that we heard before.  So I
5  take it that you feel that his actions in talking with the
6  media and his refusal to take your advice in that regard was
7  driven in part because of some distrust he has?
8         MR. SCHERSCHLIGT:  Judge, I believe that is
9  symptomatic of a very much larger problem in the case.
10        THE COURT:  I see.  So at this point you simply
11 feel you would be ineffective to carry forward, even with
12 Mr. Lucco on the defense team?
13        MR. SCHERSCHLIGT:  Our client simply does not trust
14 our advice.  His statements at the last hearing I believe
15 indicate that, and I don't want to get into the substance of
16 any recording of the radio interview, but I believe now very
17 strongly that the attorney client relationship has become
18 compromised or there has been a breakdown in communications,
19 and because he does not trust us, believes our loyalty is
20 divided, does not believe we can effectively represent him,
21 I believe that we should be permitted to withdraw from the
22 case.
23        THE COURT:  I see.  Mr. Lucco, do you take a
24 position?
25        MR. LUCCO:  Thank you, Judge.

1          THE COURT: You've had an opportunity to meet with
2    your client, I take it?
3          MR. LUCCO: I have. I spoke with him on a couple
4    of occasions by phone, with the cooperation of the Marshal
5    and the Sheriff's office, and I met with him this morning.
6          I've had an opportunity to review some of the --
7    very limited review of some of the matters in the case. But
8    I have my own conflict in this regard: I think it's in my
9    client's best interest that he have at his disposal as many
10   resources as possible to represent him in this case, and in
11   that regard I'm reluctant to see any lawyers get out of the
12   case. I certainly hope, in my own self-interest and my
13   client's as well, that he's not left for terribly long with
14   only me as his counsel.
15         That having been said, I do think that the
16   circumstances have arisen that he is steadfast in the
17   position I take it he presented to the Court previously
18   regarding the lawyers. And now when I see
19   Mr. Scherschligt's motion and understand further
20   developments, you know, I wish it could be otherwise, but I
21   think my client would prefer that they not be his lawyer in
22   this case. I'm not sure he fully understands the
23   limitations he's faced with with me as his lawyer, but
24   having said that, I think I can be creative. And I may have
25   some suggestions, when I have more time to reflect upon it,

1   as things the Court might consider to augment that so he's
2   not left and we don't have to completely reinvent the wheel.
3   That is my biggest concern here, that if their office is
4   out, we really are reinventing the wheel.  I was hoping at
5   least they could transition this but I'm not sure that's
6   going to be possible.
7            I will say this:  I've met with these lawyers this
8   morning as well and I talked to Mr. Scherschligt on a number
9   of occasions, and their office has been completely
10  cooperative with me both in terms of providing me
11  information, answering my questions, making things available
12  to me as I've requested, so I commend -- everyone, in a
13  difficult situation, I think, is trying to make this work.
14           I do think at the end of the day the Court needs to
15  really think about the resources that could be necessary for
16  starting from scratch in this case to be up to speed so that
17  the Defendant is not in a position he does not want to be
18  in, and that is having counsel make decisions and give him
19  advice before they're fully prepared in the case.
20           *THE COURT:*  Mr. Risley, the Government takes no
21  position?  I take it -- that was the representation of
22  Mr. Scherschligt, and I take it he was forthright in that
23  representation?
24           *MR. RISLEY:*  That's correct.
25           *THE COURT:*  And Mr. Finton, the representations

```
 1  have been made by both lawyers that Mr. Scherschligt's
 2  office being removed from this case is something that you
 3  would agree with.  I know that you filed the motion before
 4  but I think the record would reflect that, as we discussed
 5  the issues the last time, which resulted in my adding a
 6  member to your defense team, is something you were in full
 7  agreement with.  You would agree with that, wouldn't you?
 8          THE DEFENDANT:  Yes, sir.
 9          THE COURT:  But at this point in time, as things
10  have transitioned, at this juncture you're in agreement with
11  the Federal Public Defender's office withdrawing from the
12  case; is that true?
13          THE DEFENDANT:  Well, I've had a chance to meet
14  with Mr. Lucco briefly this morning, and whatever he wants
15  to do is fine with me.
16          THE COURT:  I'm not sure I know what that means in
17  terms of what we were talking about.  Let me --
18          THE DEFENDANT:  If he wants him to stay on, that's
19  fine; if he doesn't want that, that's fine, whatever he
20  wants.
21          THE COURT:  In light of what Mr. Lucco was talking
22  about, let me talk about something that is within the
23  Court's authority.  I look over here and I see three
24  lawyers.  This case is clearly -- and for the record, when I
25  say, "I look over here", I'm pointing at the prosecution
```

1  table.
2         This clearly is a complex case.  It's already gone
3  on quite sometime, which is one of the things I was trying
4  to address the last time we got together, and so it's
5  extended in the nature of the case.  When I talk about that,
6  Mr. Finton, not that I expect you to know, but that's a term
7  of art in our business.  It's complex and it's extended.
8  That's an important finding on my part because it invokes
9  some authority that I have, which is -- and it's an
10 important thing when I talk about the fact that the
11 Government's got three lawyers they have working on this
12 case.  It's within my authority to -- particularly upon the
13 finding that this is a complex and extended case, I can
14 appoint two lawyers for you, given the circumstance that I
15 find that this is such a complex case, and that's something
16 that I'm willing to do.  Prior to this, with the Federal
17 Public Defender's office working the case, it's not --
18 they're generating vouchers for me to sign that generate
19 extra funds to be paid out of taxpayers' money.
20        Now, Mr. Lucco -- to give you some background, we
21 have, in the Southern District, a couple of panels, if you
22 will, a panel of lawyers that are regularly appointed.
23 Mr. Lucco comes off a panel I established when I became
24 chief judge; that is, a panel of lawyers that don't
25 regularly get appointed cases.  They're a panel of lawyers

1    that only accept cases on a special basis so-to-speak,
2    lawyers that are somewhat more elite, if you will, lawyers
3    that are extraordinarily experienced, and when a judge
4    calls, chief judge calls and says, *Will you take this case*,
5    the agreement is that they can say, *No, I don't want that*
6    *case*, or they can say, *Yes, Judge, I'll accept that case*.
7    It's just a separate panel all together.
8             So Mr. Lucco didn't have to accept this assignment
9    at all.  I'm grateful that he accepted the assignment, given
10   the challenges that this case will present in terms of
11   logistics and the like, so I will -- upon the declaration
12   and the finding that this is a complex and extended case, I
13   also find that, given the nature of the case, the extent of
14   discovery in the case, that this is a case that will warrant
15   appointment of another CJA panel attorney, and so we'll
16   appoint another lawyer for you.  Having said that -- and
17   withdraw Mr. Scherschligt's and his office's participation.
18            Having said that, I don't believe that there's
19   anything wrong with the successor lawyers being in touch
20   with Mr. Scherschligt to ask questions about what's happened
21   in the case and things that have gone on in the case.  And I
22   take it, Mr. Finton, you don't believe there's such a
23   conflict that they couldn't answer your successor lawyers'
24   questions, Mr. Lucco or who else is appointed in the case?
25   Do you think that's a conflict?

1        *THE DEFENDANT:*  Not to that extent, no.

2        *THE COURT:*  Not that they would be asking him to
3   help them make decisions about things nor that they would be
4   driving the defense's theories or policy-making decisions,
5   but simply helping them get up to speed so-to-speak.  Do you
6   understand what I'm talking about?

7        *THE DEFENDANT:*  Yes.

8        *THE COURT:*  And so because that routinely happens
9   when lawyers make changes, they make the file available to
10  the new lawyer, they answer questions to the new lawyer,
11  *Well, what happened with this, what happened with that*, more
12  fact-finding issues rather than participating in the defense
13  from the standpoint of helping make decisions about where
14  the case goes from there.  I don't see that as a conflict.
15  I mean either the facts will be borne out or they won't, and
16  that's up to Mr. Lucco and his co-counsel to make decisions
17  about where the case goes, in consultation with you.

18           Now, one of the things you need to understand about
19  how defense works is that there's certain decisions that you
20  and you alone can make, decisions like whether or not you
21  plead guilty, whether or not you go to trial -- therefore,
22  whether or not you testify at a trial -- whether or not your
23  case goes on appeal.  But decisions, tactical decisions
24  about what witnesses are called, how the case is conducted,
25  logistics within the trial, strategy within the trial, those

1  are all decisions that the lawyers must make.  And so you
2  need to understand that, while you're very important to the
3  preparation of the case and to helping the lawyers in terms
4  of providing them with information and help in putting
5  together the trial strategy and the logistics, things like
6  what motions get filed or don't get filed, what witnesses
7  get called or don't get called, those are not decisions that
8  the Defendant makes.  A lawyer that lets the Defendant make
9  those decisions is a lawyer that commits malpractice.
10          So I have no idea whether you've had those kind of
11 discussions with your current defense team or not.  I just
12 tell you these things like I tell all defendants who are in
13 the process of changing lawyers because there's been some
14 difficulty.  I say these things because I'm trying to head
15 off potential problems that may occur, and could be didn't
16 occur to you to think that you were in control of those kind
17 of decisions.  As I said, there are some things that you and
18 you alone can make the decision about, those things that I
19 discussed, but other things the lawyer has to take control
20 over because that's his responsibility as the professional
21 that's representing you.  Obviously, the lawyer can't
22 control some of the things that Mr. Scherschligt discussed
23 in his motion, but you'd do well to take and heed the advice
24 of a lawyer who's trying help you and who's depending upon
25 his experience and his education in the field to try to give

1  you good advice in how you conduct yourself in the course of
2  the events leading up to what could well be a trial.
3          Mr. Lucco, do the things I just discussed address
4  the things that you were concerned about and things that you
5  addressed the Court regarding?
6          *MR. LUCCO:*  Yes, sir.
7          *THE COURT:*  You may give it some thought, but I'm
8  more than happy to take your suggestions about the CJA panel
9  attorney that should be appointed as your co-counsel.  So
10 the Motion to Withdraw will be granted.  The Court finds
11 this to be a complex and extended case that warrants
12 additional counsel to be appointed as co-counsel with
13 Mr. Lucco.
14         Mr. Scherschligt, I know that you've --
15 professional that you are, I know that you'll assist
16 successor counsel anything they need by way of providing
17 them with everything that's in your file and any information
18 they'll need to successfully pursue what they need to
19 represent Mr. Finton the best way possible?
20         *MR. SCHERSCHLIGT:*  I certainly will, Your Honor.
21         *THE COURT:*  Mr. Finton, I see you've got your
22 glasses.
23         *THE DEFENDANT:*  Thank you.
24         *THE COURT:*  So that matter's been resolved.
25 Anything else we need to deal with today while I'm here?

1      *MR. RISLEY:* Just a couple of matters, Your Honor.
2  One with the change in counsel. I just want to make sure
3  that there's a formal record made.
4      Drawing the new counsel's attention to the Court's
5  agreed protective order concerning discovery that was
6  entered on November 4th of 2009. I've sent Mr. Lucco a copy
7  of that. I just wanted to make a record in court of that
8  existence so that successor counsel will be equally bound by
9  the provisions of that order.
10     *THE COURT:* Unless there's anything entered by the
11 Court that would change that.
12     *MR. RISLEY:* Now, at this point this change
13 certainly throws the schedule, the current scheduling
14 calendar into some substantial question. I would expect
15 that there would be request for a continuance of the trial
16 date, motion dates, things of that sort, and I hope that we
17 can have, as soon as possible, a scheduling conference to
18 resolve some of those things.
19     I should inform the Court that there will be some
20 change in counsel on our end. I've been appointed to a
21 Department of Justice attache position based in Cairo. I'm
22 going to be there probably when these matters are litigated,
23 rather than here, so there may be someone joining the team
24 on our side as well.
25     *THE COURT:* Should we congratulate you or wonder

1 | who you made mad?
2 |     MR. RISLEY: I applied, Your Honor.
3 |     THE COURT: Well, then congratulations are in
4 | order.
5 |     MR. RISLEY: I have appreciated the opportunity to
6 | appear before this Court. I'm not sure what the schedule
7 | is, but if you see a change in faces on our end, it wasn't
8 | because I got fired.
9 |     THE COURT: Very well. Congratulations.
10 |     Yeah, I'm quite confident that the schedule will
11 | now change. I'll wait for the appropriate motion and then
12 | I'll work with Sandy and counsel to work out a new date
13 | that's convenient for everyone.
14 |     MR. LUCCO: Your Honor, do you have a suggested
15 | process by which I might suggest people to you? Do you want
16 | me to get the U.S. Attorney's office on phone conference?
17 | How do you want -- I assume you're thinking of the CJA panel
18 | in the Southern District?
19 |     THE COURT: Right.
20 |     MR. LUCCO: I can think about some people and
21 | suggest some names, however you want me to do that.
22 |     THE COURT: Either way. Does he need to conference
23 | you in or should he just talk to me directly?
24 |     MR. RISLEY: Please don't. I think we need to stay
25 | out of that completely.

```
 1            MR. LUCCO:  I'll think about who's on the panel and
 2   who might be appropriate.
 3            THE COURT:  Why don't you just give Sandy some
 4   names.
 5            MR. LUCCO:  I'll do that.
 6            THE COURT:  Go from there.  Okay.  Anything else we
 7   need to talk about?
 8            MR. RISLEY:  No, sir.
 9            THE COURT:  Okay.  Great.  Thanks.  We stand
10   adjourned.
11       (Court adjourned)
12                           *   *   *   *
13
14
15
16
17
18
19
20
21
22
23
24
25
```

| | |
|---|---|
| 1 | **REPORTER'S CERTIFICATE** |

I, Laura A. Blatz, RPR, CRR, CCR(MO), Official Court Reporter for the U.S. District Court, Southern District of Illinois, do hereby certify that I reported in shorthand the proceedings contained in the foregoing 15 pages, and that the same is a full, true, correct, and complete transcript from the record of proceedings in the above-entitled matter.

Dated this 12th day of November, 2013.


                                /s/   Laura A. Blatz, RPR, CRR
                                _____